**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHRISTOPHER BAILEY, # R-71263,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-0072-MJR** |
| | ) | |
| **JESSICA STOVER, THOMAS HOLT,** | ) | |
| **ZACHARY ROECKEMAN, and** | ) | |
| **SALVADOR GODINEZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Christopher Bailey, who is confined at the Big Muddy River Correctional Center ("Big Muddy") after having been adjudicated a Sexually Dangerous Person, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have violated his First, Fourth, Fifth, and Fourteenth Amendment rights by confiscating certain publications and a personal list. Plaintiff seeks compensatory and punitive damages, return of his personal property, a declaratory judgment, as well as preliminary and permanent injunctive relief. (Doc. 1, p. 20). Plaintiff's request for immediate injunctive relief will be considered in conjunction with the Court's preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. [1]

## Merits Review Pursuant to 28 U.S.C. § 1915

Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any

---

[1] Civilly committed sex offenders in Illinois are subject to the PLRA (28 U.S.C. § 1915 *et seq*). *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004).

portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At the same time, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Legal Standard for Sexually Dangerous Person Claims

Plaintiff is confined at Big Muddy under the Illinois Sexually Dangerous Persons Act ("SDPA"), 725 ILL. COMP. STAT. 205/0.01 *et seq*.  Persons civilly committed under the SDPA are deemed to be pretrial detainees, not convicted prisoners.  *See Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003).  The Due Process Clause prohibits conditions of confinement for pretrial detainees that amount to punishment.  *Board v. Farnham,* 394 F.3d 469, 477 (7th Cir.2005).  But "[a] condition of confinement may be imposed on a pretrial detainee without violating the Due Process Clause if it is reasonably related to a legitimate and non-punitive governmental goal." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427–28 (7th Cir.1996).

## The Complaint

Plaintiff has filed a 91-page complaint (including exhibits), detailing his claims. The basic facts relevant to the Court's threshold review are as follows: Plaintiff has been found to be a Sexually Dangerous Person ("SDP") under the Illinois Sexually Dangerous Persons Act,

725 ILL. COMP. STAT. 205/0.01 *et seq*.  As such, Plaintiff is confined to the Sexually Dangerous Person Program at Big Muddy. (Doc. 1, p. 17).

The complaint concerns the confiscation of two types of property: 1) a 100-page list created by Plaintiff containing the title of books, bands, music, movies, and other media-related items of interest to Plaintiff ("List"); and 2) several copies of the magazine, Maxim, which Plaintiff held a subscription for.  In March 2013, officers conducted a shakedown of Plaintiff's cell and confiscated the List and the December 2012 issue of Maxim, which had been delivered to Plaintiff through the institutional mail system. (Doc. 1, p. 9).  Plaintiff received a shakedown slip, which referenced these two items, but Plaintiff was never given the opportunity to pay for the items to be shipped home. *Id*.

In January 2013, Plaintiff received a notification of unauthorized mail related to the January/February 2013 issue of Maxim.  *Id*. at 9.  The form is filled out by Defendant Howe (publication review officer) and notes that the publication is disapproved because it contains material that is detrimental to Plaintiff's rehabilitation. *Id*. at 44.

Over the course of the next several months, each time a new issue of Maxim arrived for Plaintiff, the issue was taken by the officer assigned to Plaintiff's housing unit per instructions given by Defendant Stover (SDP program staff). *Id*. at 9-17.  Each time, Plaintiff was issued a shakedown slip.  In addition, he asserts that he usually was not given an option to send the publication home.  *Id*.

In October 2013, when the latest issue of Maxim arrived, Officer Schuler (officer with internal affairs) called Plaintiff to his office and notified him that the magazine had not been approved. *Id*. at 13.  Officer Schuler gave Plaintiff a Publication Review Determination and Course of Action form, which indicated that the magazine was being denied because the material

was found to be "otherwise detrimental to security, good order, rehabilitation, or discipline, or it might facilitate criminal activity or be detrimental to mental health." *Id*. at 80.  In addition, Officer Schuler wrote, "It is the policy of the sex offender program @ BMRCC that no individual committed to BMRCC as Sexually Dangerous Person (SDP) be permitted use of or possession of obscene material. . . ."[2]   Plaintiff claims that Officer Schuler made this determination without the approval of the Chief Administrative Officer (Defendant Roeckeman), as required by department regulations.  *Id*. at 13.  Plaintiff further alleges that Defendant Roeckeman later altered paperwork to cover-up this error.  *Id*.

Plaintiff maintains that Maxim magazine is on the approved list of publications at Big Muddy, and that there is no reason why he should not be able to receive the magazine.  In fact, on occasion, he has received the magazines without any interference.  However, he maintains that even those issues, which had been approved through the institutional mail system, were later confiscated during cell shakedowns per orders given by Defendant Stover. *Id*. at 15. He asserts that Defendant Stover has "arbitrarily decided that I cannot have the magazines, based on her own personal opinions and prejudices, and without legitimate cause of authority." *Id*. at 17.  In addition, he claims that Defendant Holt (director of the SDP program) and Defendant Roeckeman (warden at Big Muddy) are personally responsible because they have repeatedly affirmed and condoned Defendant Stover's orders to confiscate Plaintiff's property in violation of his First, Fourth, Fifth, and Fourteenth Amendment rights. *Id*. at 17-18.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* amended complaint, as shown

---

[2] The note indicates other materials that are prohibited, but the Court is unable to decipher the writing.

below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1: First Amendment Claim**

"A prison's refusal to allow an inmate access to a book 'presents a substantial First Amendment issue. Freedom of speech is not merely freedom to speak; it is also freedom to read.'" *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (*quoting King v. Fed. Bureau of Prisons,* 415 F.3d 634, 638 (7th Cir.2005)). However, in *Turner v. Safley,* the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987).

In *Lane v. Williams*, the Seventh Circuit indicated, in dicta, that tailoring the *Turner* standard to the special government interest involved in civil commitment cases may be appropriate: "[b]ecause *Turner* tells courts to consider the challenged regulation in relation to the government's legitimate interests, it would not be too difficult to adapt its standard for claims by civil detainees. To do so, courts would only have to recognize the different legitimate interests that governments have with regard to prisoners as compared with civil detainees." *Lane v. Williams*, 689 F.3d 879, 884 (7th Cir. 2012) (concluding it was unnecessary in that case to "decide whether and, if so, how to make such an adjustment to the *Turner* standard.").

Under Illinois Department of Corrections regulations, materials may be prohibited if they are deemed to be "obscene" or "detrimental to security, good order, rehabilitation, or discipline or if it might facilitate criminal activity, or be detrimental to mental health needs of an offender as determined by a mental health professional." Ill. Admin. Code tit. 20, § 525.230. In the present case, Plaintiff does not claim that the regulation itself violates the First Amendment;

rather, he asserts that the regulation *as applied to him* is unconstitutional.  Plaintiff claims that Maxim magazine is on the list of approved publications at the facility and that other inmates are allowed unfettered access to it.  Of course, Plaintiff is a participant in the SDP program at Big Muddy, and therefore, additional restrictions may legitimately be applied to him.  Whether the application of the regulation to Plaintiff serves a legitimate penological interest is a factual determination that cannot be resolved at this stage.  As such, Plaintiff may proceed on his First Amendment claim for damages against the defendants he claims ordered, implemented, and approved of the confiscations: Defendants Stover, Holt, and Roeckeman.  In addition, he may pursue his claim for injunctive relief against Defendant Roeckeman, in his official capacity as warden of Big Muddy.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding that in a claim for injunctive relief, the government official who is responsible for carrying out the requested relief should be named as a defendant in his or her official capacity).

However, Plaintiff may not proceed on his claim against Defendant Godinez. Although Plaintiff lists Godinez (director of the Illinois Department of Corrections) in the caption, he makes no allegations against him in the body of the complaint.  Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  And in the case of defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions.  *Sanville v. McCaughtry,* 266

F.3d 724, 740 (7th Cir. 2001) (citations omitted).  Plaintiff has not alleged that Godinez is "personally responsible for the deprivation of a constitutional right," *id.*, and he cannot be liable merely because he supervised a person who caused a constitutional violation.  Accordingly, Defendant Godinez will be dismissed from this action without prejudice.

**Count 2: Fourth Amendment Claim**

The United States Supreme Court has held that a prisoner has no expectation of privacy in his prison cell.

> [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  Accordingly, Plaintiff has no Fourth Amendment claim regarding the search of his cell.  Count 2 shall be dismissed against all Defendants.

**Count 3: Due Process Claim**

Plaintiff additionally asserts that confiscation of his magazines and his list constitutes an unlawful seizure of his property.  The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law.  To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for

damages in the Illinois Court of Claims.  *Sorrentino v. Godinez*, No. 13-3421, 2015 WL 294383, at *3 (7th Cir. Jan. 23, 2015); *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).  As such, Count 3 shall be dismissed against all Defendants.

### Request for Preliminary Injunctive Relief

In his prayer for relief, Plaintiff seeks compensatory and punitive damages, return of his personal property, a declaratory judgment, as well as preliminary and permanent injunctive relief. (Doc. 1, p. 20).  Plaintiff makes no other mention of a preliminary injunction throughout the body of his complaint, nor does he file a separate motion or documentation in support of his request for immediate injunctive relief.

The United States Supreme Court has emphasized that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original))**.**  In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction.  *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d

1004, 1011 (7th Cir. 1999); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-73 (7th Cir. 2009).

   Without expressing any opinion on the merits of Plaintiff's other claims for relief, the Court is of the opinion that a preliminary injunction should not be issued in this matter at this time.  A preliminary injunction is typically intended to "preserve the status quo until the merits of a case may be resolved."  *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001).  Here, Plaintiff requests a preliminary injunction ordering Defendants to "strictly adhere to [Illinois Department of Corrections Authorized Publication regulation], and particularly to allow those housed in the civil commitment program in this facility to access and possess any publications which are on the approved publications list in accordance with [Illinois Department of Corrections Authorized Publication regulation]." (Doc. 1, p. 20).

   The Seventh Circuit has repeatedly upheld prison administrator's decisions restricting inmates' speech.  *See e.g., Van den Bosch v. Raemisch,* 658 F.3d 778, 788 (7th Cir.2011) (banning newsletter that accused parole commission of manipulating and lying to inmates); *Toston v. Thurmer,* 689 F.3d 828, 830–31 (7th Cir.2012) (banning possession of Black Panther's Ten–Point Program, calling for freedom of all blacks in prison).  Furthermore, even if Plaintiff did in fact succeed on his First Amendment claim, he would be entitled to both the confiscated List and the past issues of Maxim magazine.  Thus, Plaintiff has failed to demonstrate how he would suffer irreparable harm.  Accordingly, Plaintiff's request for a preliminary injunction (Doc. 2) is **DENIED**.

<u>**Additional Pending Motions**</u>

   Plaintiff's motion for recruitment of counsel (Doc. 3) remains **PENDING** and shall be referred to United States Magistrate Judge Williams for a decision.

The motion for service at government expense (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below for those Defendants who remain in the action.  No service shall be made on the dismissed Defendant.

### Disposition

**IT IS HEREBY ORDERED** that Defendant **GODINEZ** is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff may proceed on his First Amendment claim (Count 1) for monetary relief against Defendants **STOVER, HOLT,** and **ROECKEMAN,** in their individual capacities.  He may also proceed on his First Amendment claim (Count 1) for injunctive relief against Defendant **ROECKEMAN,** in his official capacity.

**Counts 2** and **3** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **STOVER, HOLT,** and **ROECKEMAN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work

address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C.

§ 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 6, 2015**

s/ MICHAEL J. REAGAN
Chief District Judge